**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

ASHLEY BURKE, individually and on behalf of a class of similarly situated persons,

Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Defendant.

Civil Action No. 3:16cv153–HEH

**MEMORANDUM OPINION**
**(Denying Defendant's 12(c) Motion to Dismiss)**

THIS MATTER is before the Court on Defendant Federal National Mortgage Association's ("Defendant" or "Fannie Mae") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 92), and its Memorandum in Support thereof (ECF No. 92-1), filed on October 6, 2016. For the reasons stated herein, the Motion will be denied.

## I. BACKGROUND

Plaintiff Ashley Burke ("Plaintiff") filed a Complaint on behalf of herself and a putative class of similarly situated persons on March 11, 2016. (ECF No. 1.) She alleges that Defendant infringed upon her rights under the Fair Credit Reporting Act ("FCRA") by unlawfully obtaining her credit report under the false pretense of an "account review," even though no account existed. (Compl. ¶ 3.) In claiming that Defendant willfully violated § 1681b(f) of the FCRA, Plaintiff contends that her privacy was invaded and that

she was placed at an increased risk of identity theft and/or a data breach, which resulted in anxiety and emotional distress. (*Id.* ¶¶ 24–25.) Plaintiff seeks, *inter alia*, class certification, "actual and/or statutory damages and punitive damages," and attorneys' fees and costs. (*Id.* ¶ 35.)

Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on June 27, 2016. (ECF No. 30.) On August 9, 2016, the Court issued a Memorandum Opinion and an accompanying Order (ECF Nos. 57, 58) denying Defendant's motion. Nearly one month later, on September 2, 2016, the Federal Housing Finance Agency ("FHFA" or "Conservator") filed a Motion to Intervene in this case. (ECF No. 59.)

Congress established the FHFA as the primary regulatory and oversight authority of the Defendant through the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654. On September 6, 2008, pursuant to HERA, 12 U.S.C. § 4617(a), the FHFA's Director placed the Defendant—a publicly traded, private entity—into a conservatorship. In so doing, the FHFA succeeded to "all rights, titles, powers, and privileges" of Fannie Mae and its respective stockholders, boards of directors, and officers, and was authorized to "take over the assets of and operate" Fannie Mae. 12 U.S.C. §§ 4617(b)(2)(A)(i), (b)(2)(B)(i).

As Conservator, the FHFA is authorized to participate in litigation involving the Defendant and is empowered to "take such action as may be . . . appropriate to . . . preserve and conserve the assets and property of [the Defendant]." 12 U.S.C. § 4617(b)(2)(B)(iv). Further, HERA provides that "no court may take any action to

restrain or affect the exercise of powers or functions of the [FHFA] as conservator . . . ." 12 U.S.C. § 4617(f).[1]

It was in this capacity as Conservator that the FHFA sought to intervene. If permitted to do so, the FHFA represented that it intended to assert a defense under 12 U.S.C. § 4617(j) (the "Penalty Bar"), where Congress stated that:

> **(1) Applicability**
> The provisions of this subsection shall apply with respect to the Agency in any case in which the Agency is *acting as a conservator* or a receiver.
>
> . . .
>
> **(4) Penalties and fines**
> The Agency shall not be liable for any amounts *in the nature of penalties or fines*, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

12 U.S.C. § 4617(j) (emphasis added). The FHFA intended to argue that this provision precluded the relief sought by Plaintiff because Defendant is protected *to the same extent* as the FHFA while it is in a conservatorship. However, the FHFA was unable to assert this defense because its Motion to Intervene was denied as untimely, pursuant to Federal Rule of Civil Procedure 24. (ECF No. 82.)

One week later, on October 6, 2016, Defendant filed this Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 92), moving the Court to grant judgment on the pleadings. In its Motion, Defendant asserts essentially the same

---

[1] *See In re Fed. Home Loan Mortg. Corp. Derivative Litig.*, 643 F. Supp. 2d 790, 799 (E.D. Va. 2009) (citing *Chemical Futures & Options, Inc. v. Resolution Trust Corp.*, 832 F. Supp. 1188, 1192–93 (N.D. Ill. 1993) (internal citation omitted) (holding that this type of provision "does not elevate the [conservator] to the position of a sacred cow which may graze upon the rights of others at will, unchecked by the courts")).

defense under the Penalty Bar that the FHFA would have raised had its Motion to Intervene been granted.[2]

Plaintiff filed her Memorandum in Opposition (ECF No. 97) on October 11, 2016, and Defendant filed its Rebuttal Brief (ECF No. 121) on October 14, 2016.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The Fourth Circuit has held that courts are to "apply[] the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). "Accordingly, [the Court] assume[s] the facts alleged in the complaint are true and draw[s] all reasonable factual inferences in [the non-moving party's] favor." *Id.* Therefore, under Rule 12(c), "[j]udgment should be entered in favor of the movant when the pleadings 'fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law.'" *Bojorquez-Moreno v. Shores & Ruark Seafood Co.*, 92 F. Supp. 3d 459, 462 (E.D. Va. 2015) (quoting *Thomas v. Standard Fire Ins. Co.*, 414 F. Supp. 2d 567, 570 (E.D. Va. 2006)).

## III. ANALYSIS

In its Motion to Dismiss, Defendant asserts that "[b]ecause the FCRA's punitive damages, statutory damages, and attorneys' fees and costs are all 'in the nature of

---

[2] The Court is mindful of the fact that Plaintiff does not dispute Defendant's standing to raise the Penalty Bar. Therefore, the Court will decline to address that issue here. In that vein, the Court notes that the fact that Defendant raised this defense as opposed to the FHFA had no bearing on the decision in this matter.

penalties or fines,' they cannot be imposed on Fannie Mae" as a matter of law, pursuant to the Penalty Bar. (Mem. Supp. Mot. Dismiss 3.) Therefore, Defendant urges that "Plaintiff's claims must be dismissed to the extent that they seek such amounts." *Id.*

Defendant begins its argument by noting that the FHFA, in its capacity as Conservator, "'immediately succeed[ed]' by operation of law to 'all rights, titles, powers, and privileges of' [Defendant] and may 'take over the assets of and operate'" it. (Mem. Supp. Mot. Dismiss 3 (quoting 12 U.S.C. §§ 4617(b)(2)(A)(i), (b)(2)(B)(i)).) Therefore, Defendant asserts that "[b]ecause [the] FHFA as Conservator has succeeded to Fannie Mae's assets and rights, the Penalty Bar protects [Defendant] to the *same* extent that it protects the Conservator." (*Id.* at 3–4.)

As noted above, the Penalty Bar provides solely that "*[t]he Agency* shall not be liable for any amounts in the nature of penalties or fines." 12 U.S.C. § 4617(j) (emphasis added). Therefore, the Court must determine whether the Penalty Bar applies in equal force to both the FHFA *and* Defendant, despite the provision's otherwise clear and unambiguous language that it does not. In addressing this issue, the Court sees no need to "travel[], in [its] search for the meaning of the lawmakers, beyond the borders of the statute," *United States v. Great Northern Ry.*, 287 U.S. 144, 154 (1932), to reach the conclusion that the Penalty Bar applies only to the FHFA.

"As always, the starting point for any issue of statutory interpretation is the language of the statute itself." *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016) (citations and internal quotations omitted). This ancient maxim has been prescribed by guides to statutory interpretation ranging from Justinian's *Digest—a verbis legis non est*

*recedendum* ("Do not depart from the words of the law")—to the American Bar Association's Uniform Statute & Rule Construction Act of 1995—"[t]he text of a statute or rule is the primary, essential source of its meaning." Unif. Statute & Rule Construction Act § 19 (Am. Bar Ass'n 1995). The Supreme Court has reinforced this principle by noting that "[w]hen the words of a statute are unambiguous . . . 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). With this in mind, the Court will turn its attention to the statute's definitional clause before assessing the Penalty Bar within the context of 12 U.S.C. § 4617 as a whole.

Congress clearly defined the term "Agency"—without qualification as to the capacity in which the "Agency" was acting—in HERA's definitional clause as the "Federal Housing Finance Agency established under [12 U.S.C. §] 4511." 12 U.S.C. § 4502(2). Additionally, Congress unambiguously defined the term "regulated entity" in the same section as "the Federal National Mortgage Association and any affiliate thereof." *Id.* at § 4502(20).

Congress used the term "Agency" no less than 138 times throughout 12 U.S.C. § 4617 in a manner consistent with the term's defined meaning, and never within the context of including the Defendant. *See generally* 12 U.S.C. § 4617. Likewise, Congress used the term "regulated entity" at least 189 times in the statute, and never within the

context of including the FHFA. *See generally id.* Moreover, Congress used both terms in the same provision no less than 50 times throughout the statute, the majority of which describe the two as separate entities, both inside and outside of the context of their relationship under the conservatorship. *See generally id.* In the Penalty Bar, Congress only used the term "Agency"—specifically within the context of the FHFA acting as a Conservator—and made no reference to the provision's application to the "regulated entity" after it was placed into the conservatorship. *See* 12 U.S.C. § 4617(j)(4).

In view of its context within the statute as a whole, the Court must read the Penalty Bar as explicitly applying only to the FHFA due to Congress's clear and unambiguous omission of any reference to Defendant in the provision. The Court cannot ignore the express inclusion of the term "Agency" and the exclusion of the term "regulated entity" to read the Penalty Bar in such a way that it includes both, especially when the terms are used extensively throughout the statute, both separately and in conjunction with one another. To put it more simply, the Court "must presume that Congress says in a statute what it means and means in a statute what it says." *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006) (citations and internal quotations omitted). Therefore, the Court will decline to rewrite the Penalty Bar so that it includes that which it expressly excludes.

Anticipating this conclusion, Defendant argues that, despite the statute's clear and unambiguous language, the text implicitly applies to both the FHFA and Defendant when the Agency is acting in its capacity as Conservator. (Mem. Supp. Mot. Dismiss 3.) According to Defendant, "[b]ecause of the Conservator's control over *all* of Fannie

Mae's assets, it would be impossible for a court to impose liability on [Defendant] in a way that would not also impose liability on [the] FHFA as Conservator." (Rebuttal Br. 3.) In other words, Defendant asserts that if it is "liable for penalties, any payment would ultimately have to be made from assets of the Conservator," which would violate the Penalty Bar. (*Id.*) In effect, Defendant does not ask for a construction of the statute, but rather for "an enlargement of it by the court so that what was omitted . . . may be included within its scope." *Iselin v. United States*, 270 U.S. 245, 251 (1926).

In support of this request, Defendant cites a string of cases from the Eastern District of Michigan, the District of Nevada, the Northern District of Illinois, the Northern District of Georgia, and the Eastern District of Kentucky, where courts have held that the Penalty Bar—or a materially similar provision—protects Defendant from liability. *See Commercial Law Corp., PC v. Fed. Deposit Ins. Corp.*, No. 10-13275, 2016 WL 4035508 (E.D. Mich. July 28, 2016), *appeal docketed*, No. 16-2342 (6th Cir. Sept. 27, 2016); *Nev. ex rel. Hager v. Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211 (D. Nev. 2011); *Fed. Housing Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044 (N.D. Ill. 2013); *Mwangi v. Fed Nat'l Mortg. Ass'n*, No. 4:14-CV-79, 2015 WL 12434327 (N.D. Ga. Mar. 9, 2015); *Higgins v. BAC Home Loans Servicing, LP*, No. 12-cv-183, 2014 WL 1332825 (E.D. Ky. Mar. 31, 2014), *rev'd on other grounds*, 793 F.3d 688 (6th Cir. 2015).

Defendant's reasoning that the FHFA has, in effect, stepped into Fannie Mae's shoes while it is under a conservatorship is not without merit. However, there is simply no gap in this statute to be filled by implication. The plain language is clear and

controlling. Regardless of the authority that Defendant provides from other trial courts' decisions—the majority of which contain nothing more than conclusory statements and little or no analysis of the statute itself—the Court is not in a position "to ignore what Congress actually said and instead to opine on what it might have 'meant.'" *Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 435 (E.D. Va. 2015).

Defendant asserts that "[i]t would make no sense for Congress to give the Conservator such all-encompassing authority to operate [Defendant] in [Defendant's] name—and yet create a Penalty Bar that plaintiffs can avoid simply by naming Fannie Mae rather than the Conservator as a defendant."[3] (Rebuttal Br. 3–4.) However, the Court is not in a position to amend legislation that allegedly "make[s] no sense."[4] (*Id.*) That solemn duty belongs to Congress, and Congress alone. To that end, the Supreme Court's direction nearly a century ago that "supply[ing] omissions transcends the judicial function," *Iselin*, 270 U.S. at 251, still holds true today.

Therefore, the Court finds that the Penalty Bar does not apply to Defendant either

---

[3] This assertion is meritless as it pertains to this case based on the FHFA's own representations in its Motion to Intervene: "[B]ecause [the] FHFA *had no direct involvement in the facts and circumstances of this case* and only seeks to intervene in its capacity as Conservator, [the] FHFA does not believe that it has any discoverable information anyway." (Mot. Intervene, 4; ECF No. 72 (emphasis added).) In other words, there was no reason for Plaintiff to deliberate between bringing her suit against the FHFA or Defendant in view of the Penalty Bar. Plaintiff has not alleged any wrongdoing on the part of the FHFA while acting as an Agency or in its role as Conservator. Instead, Plaintiff has alleged that Defendant, apparently acting independently of the FHFA based on the FHFA's own representations, has violated the FCRA.

[4] Defendant suggests that such an interpretation of the Penalty Bar would render it a nullity. (Rebuttal Br. 4.) In view of this assertion, the Court is mindful that "one of the most basic interpretive canons [is] that '[a] statute should be *construed* so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) (emphasis added). The Court sees no need to determine whether its reading of the Penalty Bar would actually nullify the provision. Instead, the Court notes that when there is nothing to "construe[]" in Congress's clear and unambiguous text, the Court lacks the authority to depart from the statute's expressed contents.

explicitly by its own clear and unambiguous language or implicitly through Defendant's conservatorship under the FHFA. As such, the Court will deny Defendant's Motion to Dismiss.

The resolution of this issue is dispositive of Defendant's Motion as a whole. Therefore, the Court will not address the following issues raised by the parties in their briefs: (1) whether the Penalty Bar applies to statutory damages and attorneys' fees; (2) whether the FCRA renders the Penalty Bar inoperative; (3) whether the Penalty Bar is an affirmative defense; and (4) if the Penalty Bar is an affirmative defense, whether it has been waived.

## IV. CONCLUSION

For the preceding reasons, the Court finds that Defendant is not entitled to judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Therefore, Defendant's Motion to Dismiss (ECF No. 92) will be DENIED.

An appropriate Order will accompany this Memorandum Opinion.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion to all counsel of record.

/s/
Henry E. Hudson
United States District Judge

Date: Oct. 20, 2016
Richmond, Virginia